IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| INGER L. JENSEN, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|     v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:10-CR-0310-WSD-JFK-2 |
| UNITED STATES OF AMERICA, | : | |
|     Respondent. | : | CIVIL FILE NO. |
| | : | 1:15-CV-1227-WSD-JFK |

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct her federal sentence entered in this Court under the above criminal docket number. The matter is before the Court on the motion to vacate [276], Respondent's response [278], and Movant's reply [282]. For the reasons discussed below, Movant's motion to vacate and a certificate of appealability (COA) are due to be denied.

## I.   Background

The Northern District of Georgia Grand Jury charged Movant and her husband Andrew S. Mackey with (1) attempt and conspiracy to commit fraud, 18 U.S.C. § 1349, Count One; (2) wire fraud, 18 U.S.C. § 1343, Counts Two through Eight; and (3) mail fraud, 18 U.S.C. § 1341, Counts Nine through Seventeen. (Superseding Indictment, ECF No. 54). Movant pleaded not guilty and, represented by Vernon

Smith, proceeded to trial along with Mackey.  (Minute Entries, ECF Nos. 64, 130).

The jury found Movant guilty on Counts One through Four, Six, and Eight through

Seventeen.  (Jury Verdict, ECF No. 144).  By judgment entered on August 22, 2012,

the Court imposed a total 168-month sentence.  (J., ECF No. 188).[1]  On July 31, 2014,

the Eleventh Circuit Court of Appeals affirmed the judgment against Movant.  United

States v. Jensen, 573 F. App'x 863 (11th Cir. 2014), cert. denied, Mackey v. United

States, _ U.S. _, 136 S. Ct. 217 (2015).

On April 17, 2015, Movant filed a counseled § 2255 motion.  (Mot. to Vacate,

ECF No. 276).  Movant raises five grounds for relief:  counsel was ineffective for

failing to (1) file a pre-trial motion to sever, (2) obtain and communicate a pre-trial

plea offer for Movant, (3) investigate and present evidence that Movant believed no

crime was being committed, (4) object to the four-point sentencing enhancement under

U.S.S.G. § 2B1.1(b)(18), and (5) object to the amount of restitution and request that

it be lowered to $6,650,067.  (Id. at 6-28).  Grounds One through Four are discussed

below.  Ground Five is not addressed other than to state that it was mooted by the

---

[1]On May 21, 2015, the Court amended the judgment to show that $6,650,067 is
owed in restitution.  (Am. J., ECF No. 281).

2

Court's May 21, 2015, amended judgment showing that $6,650,067 is owed in restitution.  (Am. J.).

## II.    28 U.S.C. § 2255 Standard

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255.  Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," United States v. Frady, 456 U.S. 152, 164 (1982), and it is the movant's burden to establish his right to collateral relief, Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015), cert. denied, _ U.S. _, 136 S. Ct. 267 (2015).

Matters decided on direct appeal cannot be re-litigated under § 2255, and matters that could have been raised on direct appeal, but were not, generally are foreclosed in § 2255 proceedings.  Hidalgo v. United States, 138 F. App'x 290, 291, 294 (11th Cir. 2005) (citing Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004), and United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000)).  Thus, § 2255 relief "is reserved for transgressions of constitutional rights and for that narrow

3

compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn, 365 F.3d at 1232 (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); see also Massaro v. United States, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts).

"An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255). That is the case here, as shown in the discussion below.

## III.   **Discussion**

### A.   **Counsel's Failure to File Pre-Trial Motion to Sever**

"From approximately 1995 to 2007, Mackey and [Movant] operated Andrew Samuel Mackey Financial Funding Corporation (ASM), an investment company that offered several investment programs, including the Wealth Enhancement Club and the Loan Warranty Program[,]" which were used to defraud investors. See Jensen, 573 F. App'x at 866. "The government . . . investigated ASM, which resulted in an

4

indictment that charged Mackey and [Movant] with one count of conspiracy to defraud investors, seven counts of wire fraud, and nine counts of mail fraud relating to the Wealth Enhancement Club." Id. at 867.  As indicated above, Movant and Mackey were tried together.   During trial, the Townsend memorandum was entered into evidence against Mackey. Id. at 870 (describing memorandum as "a document created by attorney Robert Townsend in which Townsend opined on the legality of the Loan Warranty Program").

> The district court admitted it only against Mackey and for the limited purpose of determining his intent.   The court provided a limiting instruction during Townsend's testimony and on two other occasions during trial.  Irrelevant portions of the Townsend memorandum were redacted.  Moreover, the court's repeated instruction to the jury that the Townsend memorandum could not be considered against [Movant] mitigated any potential "spillover effect" from the admission of this evidence.

Id. at 871.

After trial, the Court instructed the jury in regard to the conspiracy count as follows –

> If defendant's knowledge of a fact is an essential part of a crime, it is enough that the defendant was aware of a high probability that the fact existed unless the defendant actually believed the fact didn't exist. This is known as deliberate ignorance, and in this case this instruction applies only to [Movant].  Ignorance is deliberate if the defendant was presented with facts that put the defendant on notice that criminal activity

5

was occurring but deliberately avoided learning the facts to show, as alleged in this case, a scheme to defraud was being conducted.

(Jury Charge Tr. at 14, ECF No. 176).  The Court further instructed the jury –

Each count of the indictment charges a separate crime against the defendants.  You must consider each crime and the evidence relating to it separately and you must consider the case of each defendant separately and individually.  If you find a defendant guilty of one crime, that must not affect your verdict as to any other crime or any other defendant.  I caution you that each defendant is on trial only for the specific crimes charged in the indictment.  You are here to determine from the evidence in this case whether each defendant is guilty or not guilty of these specific crimes.

(Id. at 16).

On direct appeal, Movant argued that the evidence for her convictions was insufficient because it did not show that she had the knowledge required for a finding of guilt.  See Jensen, 573 F. App'x at 873.  Movant also argued that the district court erred in instructing the jury on deliberate indifference.  See id. at 874.  Movant further argued that she was prejudiced by the admittance of the Townsend memorandum – which allowed the jury to "infer guilt on [Movant]."  Br. of Appellant at 21, Jensen, 573 F. App'x 863.

The Eleventh Circuit Court of Appeals determined –

In the light most favorable to the government, the evidence establishes that ASM was operating as a Ponzi scheme.  The government

6

presented evidence that the Wealth Enhancement Club was never profitable and that ASM paid returns to its investors from new capital paid to ASM by later investors.  It also presented evidence that ASM invested only a small portion of capital it received from Wealth Enhancement Club investors and lost almost all of the capital it did invest.

Instead of admitting that ASM had lost investors' capital, there was evidence that [Movant] knowingly assisted in the fraud.  For example, [Movant] was listed as the vice president of the company on ASM's website, and there was testimony that she held herself out as second-in-command on conference calls. Mackey testified that [Movant] knew about ASM's failed investments and was actively involved in attempting to recover ASM's investments from the fraudulent companies it invested in.  There was evidence that [Movant] provided excuses to intermediaries and investors about why ASM was not paying investors returns, including evidence that she had provided false information about ASM's assets.  For example, she reported that ASM held over $300 million in a Panamanian bank account when it, in fact, did not.  [Movant] exercised control over ASM's various bank accounts.  She drafted most of ASM's checks, including checks written to herself, to Mackey, and even for her daughter's entry fee into a beauty contest.  [Movant] wrote checks to ASM's investors and sent investors false account statements showing that their principal was steadily increasing.  She also sent false 1099 forms to investors reporting that investors had earned interest on their initial investment. [Movant] communicated with the intermediaries regarding ASM's ability to pay and its excuses for nonpayment.  For example, [Movant] reported that ASM had a bank account in Panama with a $330 million balance, even though the evidence established that ASM never held this large a balance in any bank account.

To be sure, the defense presented contrary evidence. But in light of the government's evidence, the jury was free to disregard [Movant's] theory that ASM was a legitimate business that failed simply because Mackey made poor investment decisions. The jury was also free to

7

conclude that the Wealth Enhancement Club started as a legitimate investment club but that Mackey and [Movant] converted it to a Ponzi scheme in order to cover losses.  Construed in the light most favorable to the jury's verdict, the evidence was also sufficient to show that Jensen had the requisite knowledge.  We conclude that the evidence presented at trial was more than sufficient to support [Movant's] convictions.

Id. at 873-74.  The Eleventh Circuit Court of Appeals additionally found that "even if the [deliberate indifference] instruction was erroneous, any error was harmless.  The district court instructed the jury on actual knowledge, and the overwhelming evidence supported the jury's finding that [Movant] had actual knowledge of the unlawful nature of ASM's business."  Id. at 876.  As to the Townsend memorandum, the Court found that Court's limiting instructions were sufficient and that it would presume the jury followed the Court's instructions.  Id. at 871.

In her § 2255 motion, Movant agrees that she was properly joined for trial with Mackey but argues that counsel's failure to move for a severance was ineffective because their joint trial (1) put at risk Movant's Fifth Amendment right against self incrimination and (2) prevented the jury from reliably judging whether she was guilty. (Mot. to Vacate at 7-8).  Movant argues that a Bruton[2] problem arose when Mackey

_____

[2]Bruton v. United States, 391 U.S. 123, 125 (1968) (holding that admission at joint trial of a codefendant's confession that incriminated defendant violated the Confrontation Clause).  There is no Bruton problem as Mackey testified and was available for cross-examination.  See United States v. Arias-Izquierdo, 449 F.3d 1168,

testified at trial regarding his own conduct and Movant's role as an "administrative assistance[,]" which infringed on Movant's right not to testify.  (Id. at 9).  Movant argues that, because she was married to Mackey and they had children together, viewing evidence against Mackey as evidence against her would have been easy for the jury although the majority of trial evidence – Townsend memorandum, Wealth Enhancement Club investments, contractual joint venture agreements with investors, knowledge on the source of money returned to investors, and what intermediaries were instructed to tell investors – was irrelevant to Movant's conduct, intent, or knowledge. (Id. at 8).  Movant asserts that is especially so because "the district court did not instruct the jury to consider the evidence (with the exception of the Townsend memorandum) separately against Mackey and [Movant]."  (Id.).

In addition to noting that there was no Bruton violation, the government argues (1) that Movant's and Mackey's defenses were not antagonistic, (2) that the Court instructed the jury to consider each offense and each defendant separately, (3) and that Movant's general allegation of prejudice is insufficient to meet her burden of showing a specific and compelling prejudice.  (Resp't Resp. at 11-12, ECF No. 278).  The

_____

1185 (11th Cir. 2006) ("[T]here is no Confrontation Clause problem when the 'confessing' co-defendant is subject to cross-examination at trial." (citation omitted)).

9

government also argues that – given the overwhelming evidence against Movant – she cannot legitimately claim that there is any reasonable probability of a different outcome if counsel had moved for a severance and the motion had been granted, resulting in separate trials.  (Id. at 13).

Movant replies (1) that the Townsend memorandum – inculpatory evidence against Mackey and inadmissible against her – is specific evidence of prejudice and (2) that the Court did not instruct the jury that "each piece of evidence" needed to be considered separately as to each defendant.  (Mov't Reply at 3-4, ECF No. 282). Movant also states that in asserting Bruton she intended to argue that counsel was ineffective for failing to seek a severance in a case that included testimony by a co-defendant, whom counsel failed to properly cross examine, i.e., Mackey testified that she was an assistant and counsel failed to properly cross-examine Mackey to show the limitation of her role.  (Mov't Reply at 4-5).

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him.  Id. at 690-92.  The Court may resolve an ineffective assistance claim

10

based on either of the above prongs.  <u>Pooler v. Sec'y, Fla. Dep't of Corr.</u>, 702 F.3d 1252, 1269 (11th Cir. 2012).  Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  <u>Strickland</u>, 466 U.S. at 690; <u>see</u> <u>also</u> <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003) ("[I]n order to prove deficient performance, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." (citation and internal quotation marks omitted)).  Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694.  The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice.  <u>Wood v. Allen</u>, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting <u>Strickland</u>, 466 U.S. at 693) (internal quotation marks omitted).

The federal criminal rules allow a defendant file a motion to sever, and "[i]f the joinder of . . . defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant . . . , the court may . . . sever the defendants' trials[.]"

11

Fed. R. Crim. P. 14(a).  Severance is mandatory if there is a serious risk that a joint

trial "(1) 'would compromise a specific trial right of one of the defendants,' or

(2) would 'prevent the jury from making a reliable judgment about guilt or

innocence.'" Puiatti v. McNeil, 626 F.3d 1283, 1310 (11th Cir. 2010) (quoting United

States v. Thompson, 422 F.3d 1285, 1292 (11th Cir. 2005)).  The Eleventh Circuit

recognizes that severance generally is required –

> (1) where the defendants rely on "mutually antagonistic defenses";
> (2) where one defendant would exculpate the defendant moving for
> severance at a separate trial but will not testify in a joint setting;
> (3) where inculpatory evidence admissible against one defendant is not
> admissible against the other; and (4) "[w]here a cumulative and
> prejudicial 'spill over' effect may prevent the jury from sifting through
> the evidence to make an individualized determination as to each
> Defendant."

Harrison v. United States, 577 F. App'x 911, 914 (11th Cir. 2014) (alteration in

original) (quoting United States v. Chavez, 584 F.3d 1354, 1361 (11th Cir. 2009)).

"Unless a defendant can establish that he was subjected to compelling prejudice

against which the district court could not afford protection, persons indicted together

should be tried together."  United States v. Rivera, 775 F.2d 1559, 1564 (11th Cir.

1985).

> "Compelling prejudice" has been defined by this circuit as the jury's
> inability to separately appraise the evidence as to each defendant and

12

render a fair and impartial verdict. . . . To establish prejudice resulting from the "spill-over" effect, the appellants would have to demonstrate the jury's inability to make an individualized determination as to each defendant. It is not enough to show that acquittal would have been more likely had the defendant been tried separately. Some degree of bias is inherent in a joint trial. . . . Furthermore, demonstrating that the evidence was stronger against a co-defendant does not satisfy the burden. . . . An instruction that the jury should consider the case against each defendant separately limits the likelihood of a "spill-over" effect.

<u>United States v. Meester</u>, 762 F.2d 867, 883-84 (11th Cir. 1985) (citations omitted).

Movant fails to demonstrate prejudice from a possible spill-offer effect based on her relationship to Mackey. The Court instructed the jury to consider separately the evidence against each co-defendant, which limits the likelihood of a spill-over effect. The Court's instruction – "You must consider each crime and the evidence relating to it separately and you must consider the case of each defendant separately and individually" – was sufficiently clear without the court articulating that the jury was to consider "<u>each piece of evidence</u>" separately as to each defendant. (Tr. Jury Charge at 16; Mov't Reply at 4). Additionally, the Eleventh Circuit Court of Appeals has already found that there was no error in the Court's admission of the Townsend memorandum, that the Court's (repeated) instructions were sufficient, and that the jury was presumed to follow those instructions. On this record, the Court cannot find that Movant was subject to compelling prejudice such that no competent counsel would

13

have failed to move for a severance.  See Freixas, 332 F.3d at 1319-20.  Further, the Eleventh Circuit Court of Appeals has determined that the evidence was "more than sufficient" and that "overwhelming evidence supported the jury's finding that [Movant] had actual knowledge of the unlawful nature of ASM's business." Jensen, 573 F. App'x at 874-75.  In light of the more than sufficient and overwhelming evidence against Movant, she does not show that, had counsel filed a motion to sever and had the Court granted it, there is a reasonable probability that the outcome would have been different.

As to Mackey's testimony, the Court fails to see how Mackey's testimony that Movant was an administrative assistant infringed on her right not to testify.  Movant remained free – to testify or not to testify – notwithstanding Mackey's testimony, and his testimony was not a comment on her right to remain silent.  Movant's argument – that counsel should have sought a severance because her co-defendant would testify and because counsel would fail to properly cross-examine her co-defendant – does not show any grounds for a severance of which the Court is aware, and Movant provides no authority for such argument.  In sum, Movant fails to show a meritorious motion to sever that counsel was ineffective for failing to raise.

14

### B.    Counsel's Failure to Obtain and Communicate a Pre-Trial Plea Offer

Movant asserts that "there was no discussion regarding a potential plea"; "that she was unaware that she had the option of entering a negotiated plea in lieu of going to trial"; and that counsel was deficient for failing to obtain, or present, a plea offer. (Mot. to Vacate at 10). Movant asserts that had a plea been negotiated and had she been advised of the possibility of reduced charges and a shorter sentence, "there is a reasonable probability that she would have accepted the plea." (Id.).

The government responds that Movant cites no evidence to show that she had any pre-conviction desire to plead guilty[3] and that Movant's argument – that there is a probability that she would have accepted a plea – is wholly speculative and insufficient to establish prejudice. (Resp't Resp. at 14). The government further responds that Movant is not credible because her current assertions – that there was no discussion regarding a potential plea and that she was unaware that she had the option of entering a plea instead of going to trial – are contradicted by her prior statements to counsel. (Id.). The government states that Movant told her attorney that she was not

---

[3]Movant misstates the government as arguing that there was no evidence to indicate any pre-conviction desire to plead guilty. (Mov't reply at 5, ECF No. 282). The government did not make that argument. The government stated that *Movant cited no such evidence*.

15

interested in pursuing a plea offer similar to the one offered to Mackey, that she asked her attorney to secure an offer that guaranteed no prison time, and that her attorney communicated to Movant that the government would not agree to those terms.  (Id. at 14-15).  The government has attached a copy of an affidavit by Smith.  (Resp't Ex. 1, ECF No. 278-1).  Smith states –

> 2.  To my knowledge there were no formal plea offers presented to me from the prosecution on behalf of [Movant] to resolve the case.  I was made aware that a plea offer was conveyed to the co-defendant in the case.  I believe it involved a 5 year "cap" on prison time.  I did tell [Movant] that we could likely secure the same type offer.  She was not interested in pursuing this.

> 3.  Before Trial, I was asked by [Movant] to attempt to secure an offer from the prosecution that guaranteed no prison time.  The prosecutors would not agree to those terms.  I communicated this to [Movant].  She made the decision to go forward with trial.

(Id.).

Movant replies and now contradicts the argument that she presented in her § 2255 motion.  Movant does not explain why she initially argued that "there was no discussion regarding a potential plea and that she was unaware that she had the option of entering a negotiated plea in lieu of going to trial[.]"[4]  (Mot. to Vacate at 10).

---

[4]Movant is represented by counsel, who signed the initial § 2255 motion.  (Mot. to Vacate at 29).  Under Federal Rules, an attorney's signature "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable

AO 72A
(Rev.8/82)

Movant now contradicts those arguments. Movant argues that she had a pre-conviction desire to plead guilty and relies on Smith's affidavit as evidence that she contemplated entering a guilty plea and discussed it with counsel – "Counsel himself states in his Affidavit that [Movant] did, in fact, ask him to attempt to secure a plea offer prior to trial[.]" (Mov't Reply at 6). Movant also states that her pre-conviction willingness to contemplate a guilty plea was shown by her proffer session, early in the case, in which she demonstrated a willingness to work with the government.[5] (Id.). Additionally, Movant now argues that her decision to go to trial was uninformed because, when counsel advised her that the government would not agree to the probationary plea that she desired, he failed to advise her as to why a probationary term was unfeasible so that she could make an informed decision on whether to proceed to trial.[6] (Id.).

---

under the circumstances: . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3).

[5]Movant offers nothing concrete on this matter.

[6]The Court finds no prejudice based on counsel's failure to explain *why* a probationary term was unfeasible when such a term was foreclosed by the government. The failure of counsel to provide additional explanation on why a probationary term is unfeasible is irrelevant to a "decision" to proceed to trial when there is no probationary plea offer on the table.

17

Movant also now comes forward with a post-sentencing e-mail from counsel and explains that she had informed counsel that she wanted to appeal because she never received a plea offer from the government and that counsel responded as follows –

> As we spoke of earlier, you were given an offer in the case. You did not want any offer that would result in anything other than probation. Probation was never an option . . . Even if you never received an offer though, that is not an appealable issue. A defendant does not have a right to an offer from the prosecution.

(Id. at 7; Mov't Ex. 1, ECF No. 282-1). Movant states that counsel's affidavit statement that he recalled no formal plea offer is contradicted by his e-mail statement that Movant was given "an offer[.]" (Id. at 7). Movant asserts that counsel was misrepresenting the truth in either the affidavit (when he stated he could recall no formal offer) or in the e-mail (when he stated there was an offer). (Id. at 8). Movant further argues (1) that counsel's affidavit misrepresents Mackey's plea offer as Movant understood it, which was that the charges against Movant would be dismissed if Mackey took the five-year offer, and (2) that counsel never told her that she could plead to a maximum of five years. (Mov't Resp. at 8).

"[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland." Missouri v. Frye, _ U.S. _, _,

18

132 S. Ct. 1399, 1405 (2012).  "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution . . . ."  Id. at 1408.  Counsel, however, is not deficient for failing to inform a defendant of a non-existent plea offer.  United States v. Butler, 118 F. App'x 371, 373 (10th Cir. 2004) ("Failure to inform him of a non-existent plea offer cannot form a basis for an inadequate assistance of counsel claim.").  Additionally, "counsel cannot force the state to plea bargain[,]" and counsel does not perform deficiently by failing to plea bargain when the state has not offered a plea bargain.  Zamora v. Dugger, 834 F.2d 956, 960 (11th Cir. 1987).

To show prejudice, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial."  Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (alteration in original) (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985)) (internal quotation marks omitted).  A movant fails to show prejudice when he does not allege that "he would have *accepted* a plea of guilt and would not have insisted on going to trial."  Rosin v. United States, 786 F.3d 873, 878 (11th Cir.) (emphasis added), cert. denied, _ U.S. _, 136 S. Ct. 429 (2015).  In addition to a defendant's willingness to plead guilty, a defendant must "demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to

19

accept it[.]" Frye, _ U.S. at _, 132 S. Ct. at 1409.  To show that counsel was ineffective for failing to pursue a plea bargain, a defendant "must show that the prosecutor would have offered a plea, that the court would have approved it, and that he would have accepted it." Williams v. Crosby, No. 8:02-CV-965-T-30MAP, 2007 WL 1724944, at *14 (M.D. Fla. June 13, 2007); see also Adames v. United States, No. 6:10-cv-1066-Orl-28GJK, 2012 WL 939022, at *1 (M.D. Fla. Mar.20, 2012) ("The failure to pursue a plea bargain does not demonstrate ineffective assistance of counsel, particularly when there is no suggestion that the prosecutor would have offered one.").

Before applying the law, the Court must determine the facts on which Movant relies.   After consideration, Movant's facts are found to be as follows – (1) Movant discussed with counsel and asked counsel to secure a probationary plea offer and was advised by counsel that the government would not agree (although counsel failed to explain fully why a probationary term was unfeasible);[7] (2) Movant understood that Mackey's plea offer involved a five-year cap and a dismissal of the charges against Movant; (3) Counsel never told Movant that she could plead to a maximum of five

---

[7]Although Movant has vacillated on the facts, (1) her reliance on counsel's statements to prove her pre-conviction desire to contemplate a guilty plea and (2) her argument that counsel did not properly advise her on the non-feasibility of a probationary plea offer persuades the Court that she is now representing that she asked counsel to secure a guilty plea offer for a probationary sentence.

AO 72A
(Rev.8/82)

years; and (4) Counsel has stated that he recalls no formal plea offer but that there was an offer that Movant did not want because it was not a probationary offer.  Even if the Court accepts Movant's facts as true, Ground Two fails.

Both parties agree that counsel *never presented Movant* with a formal plea offer. Movant, however, fails to show that a formal plea offer existed.  The only evidence of a plea offer is counsel's statement in the copy of the e-mail provided by Movant – "you were given an offer in the case" – which may have been a reference to an informal offer.  (Mov't Ex. 1).  Movant has not pursued the matter or presented any additional evidentiary proffer to show the existence of a formal plea offer or its terms.  See Davidson v. United States, No. 4:11CV1370-CDP, 2013 WL 1946206, at *4 (E.D. Mo. May 9, 2013) ("In this § 2255 proceeding, the burden is on [the movant] to demonstrate every element entitling him to relief, including the existence of a plea offer.").  Trial counsel has stated that he was aware of no formal offer, and Movant has not attempted to obtain an affidavit from the government showing otherwise. Duronslet v. Cain, No. CV-15-4389, 2015 WL 9948220, at *8 (E.D. La. Nov. 25, 2015) (holding that the petitioner failed to meet burden of showing plea offer existed – "there is no affidavit from the prosecutor or defense counsel establishing the existence of such an offer"), report and recommendation adopted, No. CV-15-4389,

21

2016 WL 366610 (E.D. La. Jan. 29, 2016).  Further, Movant's language complains of counsel's failure to *obtain* a plea offer, not counsel's failure to communicate an identified and existing formal plea offer.  Movant has not met her burden of establishing deficient performance for failing to communicate to Movant an existing, formal plea offer.  To the extent that Movant argues that counsel was ineffective for failing to negotiate a plea, her claim fails because counsel cannot force the government to plea bargain, and the evidence is that the government was unwilling to consider the probationary plea desired by Movant.

Additionally, Movant fails to show prejudice.  Although there is some indication that the government offered Mackey a five-year deal (which there is no evidence the Court would have accepted),[8] what is absent is a demonstration that the government made a five-year offer to Movant or that the Court would have accepted it.  Absent any showing regarding an actual plea offer and its terms, Movant cannot show that, had she

---

[8]The Court imposed on Mackey a total 324-month sentence.  J., United States v. Mackey, No. 1:10-cr-0310-WSD-JFK-1 (N.D. Ga. Nov. 16, 2012), ECF No. 239. At Mackey's sentencing, the Court stated,

> I have done a number of these cases.  What is really different about this case is this. . . . I have never had this many victims tell me what you did to them. . . .

Sentencing Tr. at 175, Mackey, ECF No. 231.

22

been aware of the alleged offer, she would have pleaded guilty.  Movant states that "had a plea been negotiated" and had counsel advised her of the possibility of an unspecified reduction of charges and the possibility of a reduction for acceptance of responsibility, "there is a reasonable probability that she would have accepted the plea."  (Id. at 10).  The possibility of a plea based on unspecified terms that the government may or may not have offered is insufficient to show prejudice.

### C.   Counsel's Failure to Investigate and Present Evidence that Movant Actually Believed no Crime was Being Committed

At trial, Mackey testified – "I pressed in my numbers and I heard:  Your account has three zero zero zero zero zero zero zero, whatever, the three hundred million dollars.  My daughters heard it.  And everybody was just like, wow, we did it."[9]  (Trial Tr. Vol. 5 at 1350-51, ECF No. 217).

Movant states that she told counsel that she was present during phone calls to foreign banks to verify high account balances and that she believed that millions of dollars were being generated based on their investments.  Movant argues that counsel was ineffective for failing to investigate the matter and present evidence to show that

---

[9]Movant appears to argue that hearing a phone message – that informs a bank client of an multi-million dollar account balance that the client considers as a "wow, we did it" surprise – is evidence that supports a reasonable belief that those funds exist. The jury did not appear to find this testimony persuasive in regard to Mackey.

23

she believed the money really existed.  (Mot. to Vacate a 12).  Movant argues that counsel should have cross examined Mackey to show that she was present during the phone call to Multicredit Bank, during which it was stated that the account had three hundred million dollars.  (Id. at 12-13).  Movant also argues that counsel should have called Bernice Byrd, who was present during the same phone call, to also verify that Movant was there during the phone call.  (Id. at 13).

Respondent argues that Movant fails to show how a different line of cross-examination would have changed the outcome when there was a mountain of evidence showing that she was a key player in the conspiracy.  (Resp't Resp. at 17-18).

Strickland, discussed earlier, applies.

Notably, Movant provides no proffer or affidavit from either Mackey or Byrd that shows either one of them would have testified that Movant was present during the phone call at issue.  Movant cannot show that prior counsel was ineffective for failing to produce something that current counsel also fails to produce.  A litigant attempting a collateral attack on a valid conviction must do more than Movant has done to meet their burden and demonstrate prejudice.  See Gilreath v. Head, 234 F.3d 547, 552 n.12 (11th Cir. 2000) (stating that if a petitioner complains of counsel's failure to obtain witnesses, he must "show that witnesses not presented at trial actually were available

24

and willing to testify at time of trial"); Hill v. Moore, 175 F.3d 915, 923 (11th Cir. 1999) (holding that absent proffer of evidence, the petitioner could not show prejudice based on counsel's failure to introduce evidence).

### D.   Counsel's Failure to object to the Four-Point Sentencing Enhancement under U.S.S.G. § 2B1.1(b)(18)

Movant argued on direct appeal that the trial court erred when it enhanced her sentence four levels under U.S.S.G. § 2B1.1(b)(18)(A) (2012) enhancement for being an investment advisor or a person associated with an investment advisor in an offense that involved a securities law violation.  Br. of Appellant at 34-35, Jensen, 573 F. App'x 863.  Mackey argued (1) that the enhancement required a violation of securities law; (2) that securities law, as defined by the guidelines, was not at issue in the case; and (3) that there was not an adequate basis for the enhancement.  Br. of Appellant Mackey at 60-61, Jensen, 573 F. App'x 863.  The Eleventh Circuit found as follows –

> Mackey and [Movant's] conduct satisfies the elements of 15 U.S.C. § 77(g)(a)[10] and constitutes a violation of securities laws.  Because Mackey exercised control over how (and whether) the Wealth Enhancement Club investors' funds were invested, Mackey is considered to have provided investment advice for purposes of the Investment

---

[10]Respondent notes that the citation to § 77(g)(a) appears to be a scriveners error because there is no § 77(g)(a) and because it appeared that the Eleventh Circuit was referring to § 77q(a), which Respondent cited on direct appeal to show that Mackey and Movant had violated securities law.  (Resp't Resp. at 24-25).

25

> Advisers Act of 1940 and the investment advisor enhancement. . . .
> [Movant], as the vice president of ASM, exercised control over investors'
> funds, and acted in more than just a ministerial capacity. The district
> court did not clearly err in applying this 4-level enhancement.

Jensen, 573 F. App'x at 876-77.

Movant argues that counsel was ineffective for failing to object when the district court did not find that the offense involved a violation of securities law before applying the § 2B1.1(b)(18)(A) enhancement. (Mot. to Vacate at 16-19). Movant asserts that the Eleventh Circuit's finding that Movant's conduct constituted a violation of securities law is factually unfounded. (Id. at 20).

Respondent argues that Movant may not relitigate a matter decided on direct appeal. (Resp't Resp. at 24). Movant replies that she (as opposed to Mackey) did *not* argue on direct appeal that the offense did not involve a securities law violation. (Mov't Reply at 9). Movant also argues that, even if she had litigated the matter on direct appeal, the Eleventh Circuit's decision is binding only if the issue was decided adversely to Movant on the merits and "the ends of justice would not be served by reaching the merits" of her current application, citing Sanders v. United States, 373 U.S. 1, 15 (1963), and Davis v. United States, 417 U.S. 333, 342 (1974). (Mov't Reply at 9 and n.3). Movant asserts that the Eleventh Circuit's finding is not binding because

26

it was clearly erroneous and the ends of justice will be served by this Court addressing the issue.  (Id. at 12).

Absent an intervening change in controlling law, "once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255. . . . A rejected claim does not merit rehearing on a different, but previously available, legal theory." Nyhuis, 211 F.3d at 1343 (citation and internal quotation marks omitted); see also Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012) ("At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding.").

Movant has already argued before the Eleventh Circuit Court of Appeals that an enhancement under § 2B1.1(b)(18)(A) was error because she did not qualify as an investment advisor or a person associated with an investment advisor.  She may not now challenge the enhancement on the previously available theory that an enhancement under § 2B1.1(b)(18)(A) was error because the offense did not involve a violation of securities law (a theory advanced by Mackey).[11]

_____

[11]To the extent that Movant may have intended to argue that appellate counsel was ineffective for failing to raise the same argument raised by Mackey, Movant fails to show prejudice.

27

Movant's attempt to rely on <u>Sanders</u> and <u>Davis</u> is misplaced.  <u>Sanders</u>, a 1963 case concerned with successive petitions before AEDPA, decided the weight that should be accorded the denial of a prior application for collateral relief. [12]  <u>Sanders</u> did not decide what weight a district court should accord to a circuit court's decision on direct appeal.  Further, <u>Davis</u> held that a prior decision on direct appeal does not preclude collateral relief on the basis of an *intervening change in law*.  <u>Davis</u>, 417 U.S. at 343.  Movant may not relitigate the application of §2B1.1(b)(18)(A).

## IV.   **Certificate of Appealability (COA)**

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the

---

[12]Before AEDPA was enacted, a district court deciding a repeat application for collateral relief would have to determine what weight to accord a prior denial *by a fellow district court* in litigation – habeas proceedings – where *res judicata* does not apply.  See <u>Sanders</u>, 373 U.S. at 8.

28

constitutional claims debatable or wrong." Melton v. Sec'y, Fla. Dep't of Corr., 778

F.3d 1234, 1236 (11th Cir. 2015) (quoting Slack v. McDaniel, 529 U.S. 473, 484

(2000)) (internal quotation marks omitted),  cert. denied, _ U.S. _, 136 S. Ct. 324

(2015).

> When the district court denies a habeas petition on procedural grounds .
> . . a COA should issue when the prisoner shows, at least, that jurists of
> reason would find it debatable whether the petition states a valid claim of
> the denial of a constitutional right and that jurists of reason would find it
> debatable whether the district court was correct in its procedural ruling.

Damren v. Florida, 776 F.3d 816, 820 (11th Cir. 2015) (quoting Slack, 529 U.S. at

484).

It is recommended that a COA is unwarranted because it is not debatable that

Movant fails to show that counsel was ineffective.  If the Court adopts this

recommendation and denies a COA, Movant is advised that she "may not appeal the

denial but may seek a certificate from the court of appeals under Federal Rule of

Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Proceedings for

the United States District Courts.

## V.    Conclusion

For the reasons stated above,

29

**IT IS RECOMMENDED** that Movant's motion [276] to vacate, set aside, or correct her federal sentence be **DENIED** and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED** this 9th day of March, 2016.


_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

30

AO 72A
(Rev.8/82)