# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

INGER L. JENSEN,

                Movant,

     v.                                     **1:10-cr-310-WSD-JFK-2**

UNITED STATES OF AMERICA,       **1:15-cv-1227-WSD-JFK**

                Respondent.

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Janet F. King's Final Report and Recommendation [294] ("Final R&R"), recommending denial of Inger L. Jensen's ("Movant") Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 [276] ("Motion to Vacate"). Also before the Court are Movant's Objections to Magistrate Judge's Report and Recommendation [296] ("Objections").

## I.    BACKGROUND

On April 12, 2011, Movant was indicted, along with her husband, Andrew S. Mackey, by a grand jury on the following charges: (1) attempt and conspiracy to commit fraud, 18 U.S.C. § 1349 (count one); (2) wire fraud, 18 U.S.C. § 1343 (counts two through eight); and (3) mail fraud, 18 U.S.C. § 1341

(counts nine through seventeen).[1]  (See generally Superseding Indictment [54]).

The charges "stemmed from allegations that the two operated a Ponzi scheme

which defrauded members of the public who invested in A.S.M. Financial Funding

Corporation's ("ASM") Wealth Enhancement Club and Wealth Enhancement Club

II (jointly referred to as the "Wealth Enhancement Club")."  ([276] at 1-2).  On

April 25, 2011, Movant pled not guilty, and, on May 7, 2012, she proceeded to trial

with her husband.  ([64], [130]).  Movant was represented by Vernon Smith

("Mr. Smith"), appointed counsel, at trial.  (Id.).  On May 16, 2012, the jury

returned a verdict of guilty on counts one through four, six, and eight through

seventeen.  ([144]).  On August 22, 2012, the Court entered judgment and

sentenced Movant to 168 months imprisonment.  ([188]).  On July 31, 2014, the

Eleventh Circuit Court of Appeals affirmed the judgment.  ([268], [271]); see also

United States v. Jensen, 573 F. App'x 863 (11th Cir. 2014).

On April 17, 2015, Movant timely filed her Motion to Vacate.  In it, she

raises five grounds for relief—all of which relate to the alleged ineffective

assistance of her trial counsel, Mr. Smith.  The grounds include:

---

[1]  Movant objects to certain factual findings in the Final R&R.  The Court has considered the facts presented in the Objections and finds, upon a *de novo* review, that they do not support Movant's claim that either her counsel failed to negotiate a formal plea with the Government, or that a formal plea was extended to her through her counsel and that her counsel failed to present it to her.

1. Counsel was ineffective for failing to file a pre-trial motion to sever;

2. Counsel was ineffective for failing to obtain and communicate a pre-trial plea offer;

3. Counsel was ineffective for failing to fulfill his duty to investigate and present evidence that Defendant actually believed that no crime was being committed;

4. Counsel was ineffective for failing to object to the four-point enhancement applied under U.S.S.G. § 2B1.1(b)(18) on the grounds that the offense conduct did not violate securities laws; and

5. Counsel was ineffective for failing to object and correct the restitution amount attributable to Movant and requesting to lower the amount to $6,650,067.[2]

(See generally [276]).  On March 9, 2016, the Magistrate Judge issued her Final R&R, finding that Movant failed to meet the significant burden imposed by a § 2255 motion to vacate.  ([294]).  On March 22, 2016, Movant filed her Objections [296] to the Final R&R.[3]  Movant claims the Magistrate Judge erred when she found (1) Movant's counsel's failure to obtain and communicate a pre-trial plea offer did not constitute ineffective assistance of counsel; (2) Movant's

---

[2]     On May 21, 2015, the Court amended the judgment to show that $6,650,067 is owed in restitution—thus mooting this argument.  (See Amended Judgment [281]).

[3]     Mr. Mackey's objections [326] were also filed on the docket in this case. These objections are specific to Mr. Mackey's case and the Magistrate Judge's Final R&R on Mr. Mackey's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255.  The Court therefore does not consider them here.

argument regarding her counsel's failure to investigate and present evidence that she actually believed no crime was being committed was without merit; and (3) Movant's argument that her counsel was constitutionally deficient for failing to object to the "violation of securities laws" enhancement was barred from habeas review.  (See generally [296]).

## II.    LEGAL STANDARDS

### A.    28 U.S.C. § 2255 Motion

Under 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate his sentence "upon the ground[s] that the sentence was imposed in violation of the Constitution or laws of the United States, [] that the court was without jurisdiction to impose such sentence, [] that the sentence was in excess of the maximum authorized by law, or [that the sentence] is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a).  Collateral relief, however, is limited.  It is well-settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).  The movant bears the burden of persuasion, which "is supposed to be a heavy one." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

Matters decided on direct appeal cannot be re-litigated under § 2255, and matters that could have been raised on direct appeal, but were not, are generally

foreclosed.  Hidalgo v. United States, 138 F. App'x 290, 291 (11th Cir.

June 29, 2005) (citing Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir.

2004).  Thus, § 2255 relief "is reserved for transgressions of constitutional rights

and for that narrow compass of other injury that could not have been raised on

direct appeal and would, if condoned, result in a complete miscarriage of justice."

Lynn, 365 F.3d at 1232 (quoting Richards v. United States, 837 F.2d 965, 966

(11th Cir. 1988) (internal quotation marks omitted).  A constitutional claim of

ineffective assistance of counsel generally is properly raised on collateral review in

order to allow for adequate development and presentation of relevant facts.

Massaro v. United States, 538 U.S. 500, 505-09 (2003).   "An evidentiary hearing

is not required when 'the motion and the files and records of the case conclusively

show that the prisoner is entitled to no relief.'"  Gordon v. United States, 518 F.3d

1291, 1301 (11th Cir. 2008) (quoting § 2255).

        Claims for ineffective assistance of counsel—like those asserted by Movant

here—are evaluated under the standards set forth by the Supreme Court in

Strickland v. Washington, 466 U.S. 668 (1984).  The first part of the inquiry

requires the court to determine whether counsel's performance fell "below an

objective standard of reasonableness."  Id.at 688.  The court must then assess

whether counsel's performance prejudiced the defendant.  Id.  In other words, the

court must ask whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also Lynn v. United States, 365 F.3d 1225, 1235 n.21 (11th Cir. 2004) (noting that "cause and actual prejudice standard" for § 2255 motion "mirrors the standard used to evaluate collateral attacks on state convictions"); Reece v. United States, 119 F.3d 1462, 1467 (11th Cir. 1997) ("'[A]ctual prejudice' is 'not merely that the errors at [the defendant's] trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" (quoting Frady, 456 U.S. at 170 )). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

B.     Magistrate Judge's Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S.

1112 (1983).  A district judge "shall make a *de novo* determination of those

portions of the report or specified proposed findings or recommendations to which

objection is made."  28 U.S.C. § 636(b)(1).  With respect to those findings and

recommendations to which objections have not been asserted, the Court must

conduct a plain error review of the record.  See Garvey v. Vaughn, 993 F.2d 776,

779 n.9 (11th Cir. 1993); United States v. Slay, 714 F.2d 1093, 1095 (11th Cir.

1983) (per curiam).  Where, as here, a party has filed objections to some, but not

all, of the Magistrate Judge's findings, the Court conducts a combined review.

## III.  DISCUSSION

Movant only objects to the Magistrate Judge's findings with respect to

grounds two, three, and four of the Motion to Vacate, so the Court need only

conduct a *de novo* review of these portions.  The Court conducts a plain error

review of the remainder of the Final R&R.

### A.    De Novo Review

The Court reviews *de novo* the following of Movant's arguments:

(1) counsel was ineffective for failing to obtain and communicate a pre-trial plea

offer; (2) counsel was ineffective for failing to fulfill his duty to investigate and

present evidence that Defendant actually believed that no crime was being

committed; and (3) counsel was ineffective for failing to object to the four-point

enhancement applied under U.S.S.G. § 2B1.1(b)(18) on the grounds that the offense conduct did not violate securities laws.

1.    Failure to Obtain and Communicate a Pre-Trial Offer

Movant claims in her Motion to Vacate that her counsel was deficient for failing to obtain, or present, a plea offer.  ([276] at 10).  She states that "there was no discussion regarding a potential plea" nor was she aware that she "had the option of entering a negotiated plea in lieu of going to trial."  (Id.).  She claims, moreover, that "[h]ad a plea been negotiated . . . and had she been advised of the possibility of reduced charges and a shorter sentence . . . , as well as the consequences of rejecting the plea and proceeding to trial, there is a reasonable probability that she would have accepted the plea."  (Id.).  The Government argues that Movant has not presented evidence showing she had any pre-conviction desire to enter a negotiated plea and that Movant's argument is speculative and insufficient to establish prejudice.  (Government's Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [278] ("Response") at 14).

"[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland."  Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012).  "[A]s a general rule, defense counsel has the duty to

communicate formal offers from the prosecution . . . ." Id. at 1408. Counsel, however, is not deficient for failing to inform a defendant of a non-existent plea offer. United States v. Butler, 118 F. App'x 371, 373 (10th Cir. 2004) ("Failure to inform him of a non-existent plea offer cannot form a basis for an inadequate assistance of counsel claim."). Additionally, "counsel cannot force the state to plea bargain[,]" and counsel does not perform deficiently by failing to plea bargain when the state has not offered a plea bargain. Zamora v. Dugger, 834 F.2d 956, 960 (11th Cir. 1987).

To demonstrate prejudice, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial." Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (alteration in original) (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985)) (internal quotation marks omitted). A movant fails to show prejudice when he does not allege that "he would have accepted a plea of guilt and would not have insisted going to trial." Rosin v. United States, 786 F.3d 873, 878 (11th Cir.). A defendant must also "demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it[.]" Frye, 132 S. Ct. at 1409. To show that counsel was ineffective for failing to pursue a plea bargain, a defendant "must show that the

prosecutor would have offered a plea, that the court would have approved it, and that he would have accepted it." Williams v. Crosby, No. 8:02-CV-965-T-30MAP, 2007 WL 1724944, at *14 (M.D. Fla. June 13, 2007); see also Adames v. United States, No. 6:10-cv-1066- Orl-28GJK, 2012 WL 939022, at *1 (M.D. Fla. Mar.20, 2012) ("The failure to pursue a plea bargain does not demonstrate ineffective assistance of counsel, particularly when there is no suggestion that the prosecutor would have offered one."). The movant must show finally that the, had all these things occurred, "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012).

The Court finds Movant has not shown that her counsel was ineffective for failing to obtain and communicate a pre-trial offer. First, there is simply not enough evidence in the record to permit the Court to conclude that, but for her counsel's errors, Movant would have pled guilty to some unknown and unsubstantiated offer, would not have insisted on going to trial, that the plea would not have been canceled by the prosecution, and that the district court would have accepted the plea. There is no suggestion that a formal plea offer was ever presented by the Government to Movant's counsel, or that Movant's counsel failed to communicate one to Movant. But for a blanket statement that had she been

offered a plea (presumably, "any" plea would have done) she would have accepted any offer they might have made, Movant offers no further argument or facts on this matter.  To the extent Movant argues that her counsel was ineffective because he did not effectively negotiate with the Government or prod the Government sufficiently enough to extend a formal offer, Movant's argument fails.  Movant's counsel was not required to inform her of a "non-existent plea offer" nor was he defective for failing to force the Government to offer a formal plea bargain. Zamora, 834 F.2d at 960.  The Court finds Movant's counsel was not ineffective for failing to communicate or negotiate a plea deal on her behalf.

                2.      <u>Failure to Investigate and Present Evidence of Defendant's Actual Belief That No Crime Was Being Committed</u>

Movant next argues defense counsel was ineffective because he failed to "investigate and present evidence relating to Jensen's actual lack of knowledge of the fraud that she was charged [] and convicted of."  ([276] at 12).  Movant states that she informed counsel, prior to trial, that she "believed millions of dollars were being generated by investments made by the Wealth Enhancement Club because she was present during phone calls that were made to foreign bank[s] [] to verify high account balances."  (Id.).  Movant states specifically that "[e]vidence that [she] was present during a phone call in which a $300 million balance was verified in an off-shore account was probative of whether [her] supposed 'deliberate

11

ignorance' was in fact 'influenced by exigent circumstances,' and thus not deliberate at all." (Id.). Movant argues that counsel should have cross-examined her co-defendant Mr. Mackey to show that she was present during the phone call and that her counsel should have called Bernice Byrd, who was also present during the same call, to verify that Movant's presence. (Id.). Movant supplies, as an exhibit to her Objections, an affidavit from Ms. Byrd stating she and Movant were present during the call and that she informed Movant she would testify at trial regarding the call. ([296.1] at 1).

The Government argues, in contrast, that it introduced evidence at trial that Movant told others about the foreign bank account with an approximately $300 million balance, and "[t]hus, the jury heard evidence that [she] was present when the foreign bank officers allegedly told her the outlandish account balance." ([278] at 16; see also GX202). The Government states that Movant "fails to show that her defense suffered because of counsel's strategic decision not to question [her co-defendant] further about this matter." (Id.). The Government also argues that defense counsel's failure to cross-examine her co-defendant on this particular subject was not prejudicial because she asserts no "specific instance where a different line of cross-examination 'arguably could have affected the outcome.'" (Id. at 17). The Government concludes that Movant "ignore[s] the mountain of

evidence presented by the prosecution at trial to show that she was a key player in the conspiracy," and that, "[i]n shot, [Movant] is merely attempting to re-litigate in her § 2255 motion two issues that were decided against her on direct appeal: (1) sufficiency of the evidence as to her actual knowledge that fraud was being committed; and (2) deliberate ignorance." (Id. at 17-18).

Even considering Movant's proffer of Ms. Byrd's affidavit attesting to Movant's presence on the so-called $300 million call—submitted as part of Movant's Objections—the Court finds Movant's argument unconvincing.[4] The Government introduced at trial, as Exhibit 202, an email, dated July 24, 2006, with the subject "IT HAS BEEN DONE," from Movant to various individuals stating:

> Good Day,
>
> Mr. Mackey has done it!
>
> I have been informed, via conference call with the bank officer, myself and Mr. Mackey, that our account in Panama is open and operating with the sum of $330M in it.

---

[4]     The Magistrate Judge's primary reason for denying this claim is that Movant failed to provide a proffer or affidavit from Mr. Mackey or Ms. Byrd attesting to her presence on the call to the foreign bank. ([294] at 23-25). The Court does not agree that this fact, on its own, supports denial of Movant's Motion to Vacate. The Court therefore declines to adopt the Final R&R's reasoning on this point. The Court does, however, agree that the Magistrate Judge reached the correct conclusion here.

I also re-affirmed it by calling the bank myself and in putting the bank accounting number and pin #'s to hear it for myself.

Please call him on his cell phone.

Let's celebrate!

I want to personally thank those of you who have kept the calm within their own realm of clients. I know it has been a hard, stressful road we have all walked. God has watched over all of us and has made all possible. This is just the beginning, now we have to return the gift and continue to help others.

Thank you,

Ms. Inger Jensen

See Gov. Ex. 202.

This email communicates exactly what Movant states her counsel failed to do at trial in cross-examining Mr. Mackey and introducing Ms. Byrd. That is, contrary to Movant's claim here, the jury in fact was presented with information that Movant participated in a phone call in which she was informed that her foreign bank account's balance was $330 million. The email also evinces, on its face, the possibility that Movant believed that the account balance was legitimate. The jury was presented with this evidence and nevertheless—in assessing the case in its entirety—chose to reject any suggestion that Movant actually believed the funds in the bank account were genuine. There are myriad reasons trial counsel may have

decided to rely on the evidence rather than calling Ms. Byrd for direct and cross-examination, or cross-examining Defendant Mackey.

The Court also does not conclude that Movant was prejudiced by her counsel's failure to introduce this evidence in another manner. Movant simply cannot show a "reasonable probability that the result of the proceeding would have been different." Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003); see also Reece, 119 F.3d at 1467 ("'[A]ctual prejudice' is 'not merely that the errors at [the defendant's] trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" (quoting Frady, 456 U.S. at 170 )). The Court concludes Movant's counsel was not ineffective for failing to cross-examine Mr. Mackey or introducing Ms. Byrd as a witness to show Movant actually believed what she was doing was lawful.

### 3. Failure to Object to Four-Point Enhancement

Movant also contends that her counsel erred by failing to object to the four-level enhancement in her sentencing, under U.S.S.G. § 2B1(b)(18)(A), "on the grounds that the offense conduct involved 'a violation of securities law' when the district court did not make the requisite factual and legal finding that such a violation occurred and there was a reasonable probability that counsel would have

prevailed on the issue." ([276] at 16). Movant argues, more specifically, that her sentence was "increased by four levels for a 'violation of securities law,' but the 'securities law' that she allegedly violated was never identified by the district court." (Id. at 21). Movant concludes that "[n]ot only d[id] this omission violate her Due Process rights, it also violates the basic principles . . . that all sentencing enhancements have to have proper findings of law and fact." (Id.). The Government argues, on the other hand, that Movant's counsel objected to the enhancement at trial, that the district court overruled the objection and applied the enhancement, that Movant raised the issue on direct appeal, and that the "Eleventh Circuit correctly affirmed this Court's decision on the investment advisor enhancement." (Id. at 23-25).

The Court finds that the four-level enhancement to Movant's sentence was appropriate. The sentencing guidelines provide for a 4-level enhancement if the offense involved "a violation of securities law, and at the time of the offense, the defendant was . . . (iii) an investment advisor, or a person associated with an investment advisor." U.S.S.G. § 2B1.1(b)(18)(A). To apply the investment advisor enhancement, the defendant need not be convicted under a securities or commodities law. Id. § 2B1.1(b) cmt. N.14(B). Instead, the enhancement may apply in the case that a defendant is convicted under a general fraud statute if the

defendant's conduct violated a securities law or commodities law.  Id.  The district
court, and then the Eleventh Circuit, concluded as much.

At Movant's sentencing, in finding that Movant constituted a "partner,
officer, director of the investment advisor, or [] person performing similar
functions," as defined under 15 U.S.C. § 80b-2, the Court held:

> I think Mr. Mackey in his two days of testimony described the way
> that they operated it, and he relegated to Ms. Jensen all of the
> operational responsibilities to include – and it necessarily had to
> include, and the jury found it to include – that Ms. Jensen knew that
> she was distributing information, because she was the one that was
> taking care of the bank accounts.
>
> She knew what was in the bank accounts, she knew how money was
> being spent, she knew that the money was not available, and she knew
> that there was no way that the money that was coming in was going to
> investments, because she was the keeper of the cash.
>
> And so she had this intricate function in this scheme as far as being
> the person who had operational responsibility for it, and as a result
> was intricately involved in knowing the status of the scheme at all
> times, and thus was the person responsible in connection with her co-
> conspirator, Mr. Mackey, of making sure that people kept quiet. . . .
>
> So whether you look at it functionally or whether you look at it as far
> as the title that she had the role that she had in this company as a vice
> president – in fact, I would argue that if you looked at it either way,
> that they ultimately become intertwined, that her title in fact reflected
> her function.
>
> And under the definition, whether you look at it functionally or
> whether you look at it just as far as legal relations and what positions
> a person technically had within this organization, I find that she – that
> the evidence fully supports that she, by a preponderance of the

> evidence, . . . performed the role as an officer, and therefore the
> enhancement applies.

([218] at 12-14).  On appeal, the Eleventh Circuit found that "Mackey and Jensen's conduct . . . constitute[d] a violation of securities laws" and "Jensen, as the vice president of ASM, exercised control over investors' funds, and acted in more than just a ministerial capacity."  United States v. Jensen, 573 F. App'x 863, 877 (11th Cir. 2014).  The Court concluded that "[t]he district court did not clearly err in applying this 4-level enhancement."  Id.

Absent an intervening change in controlling law, "once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255. . . .  A rejected claim does not merit rehearing on a different, but previously available, legal theory."  United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (citation and internal quotation marks omitted); see also Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012) ("At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding.").  The Court finds that Movant has failed to demonstrate why she should be permitted to re-litigate this claim through a collateral attack.

B.    Plain Error Review

The Magistrate Judge addressed Movant's claim that her counsel was ineffective because he failed to file a pre-trial motion to sever.  ([294] at 4). Movant argues her counsel's failure to move for a severance (from being tried with her husband) was ineffective because her joint trial (1) compromised her Fifth Amendment right against self incrimination and (2) prevented the jury from reliably judging whether she was guilty.  ([276] at 7-8).  Movant claims that, because she was married to Mr. Mackey, the jury likely imported any evidence admitted against Mr. Mackey in determining her guilt.  (Id. at 8).  Movant argues this is so because "the district court did not instruct the jury to consider the evidence (with the exception of the Townsend memorandum) separately against [Mr.] Mackey and [Movant]."  (Id.).

The federal criminal rules provide for severance of a trial "[i]f the joinder of . . . defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant . . . ."  Fed. R. Crim. P. 14(a).  Severance is mandatory if there is a serious risk that a joint trial "(1) 'would compromise a specific trial right of one of the defendants,' or (2) would 'prevent the jury from making a reliable judgment about guilt or innocence.'"  Puiatti v. McNeil, 626 F.3d 1283, 1310 (11th Cir. 2010) (quoting United States v. Thompson, 422 F.3d 1285,

1292 (11th Cir. 2005)).  The Eleventh Circuit recognizes four types of prejudicial

joinder that generally require severance:

>(1) where the defendants rely on "mutually antagonistic defenses";

>(2) where one defendant would exculpate the defendant moving for severance at a separate trial but will not testify in a joint setting;

>(3) where inculpatory evidence admissible against one defendant is not admissible against the other; and

>(4) "[w]here a cumulative and prejudicial 'spill over' effect may prevent the jury from sifting through the evidence to make an individualized determination as to each Defendant."

Harrison v. United States, 577 F. App'x 911, 914 (11th Cir. 2014) (alteration in

original) (quoting United States v. Chavez, 584 F.3d 1354, 1361 (11th Cir. 2009)).

"Unless a defendant can establish that he was subjected to compelling prejudice

against which the district court could not afford protection, persons indicted

together should be tried together."  United States v. Rivera, 775 F.2d 1559, 1564

(11th Cir. 1985).

"In order to demonstrate an abuse of discretion, the appellant must show

'compelling prejudice' arising from the decision not to severe."  United States v.

Meester, 762 F.2d 867, 883-84 (11th Cir. 1985) (citations omitted).  "Compelling

prejudice" is defined, at least in this Circuit, as the "jury's inability to separately

appraise the evidence as to each defendant and render a fair and impartial verdict."

Id. Establishing prejudice from the "spill over" effect requires a demonstration that the jury was unable to make an "individualized determination as to each defendant." Id. Simply demonstrating that evidence was stronger against a co-defendant is not enough. Id. An instruction that the jury should consider the case against each defendant separately limits the likelihood of a "spill-over" effect. Id.

The Magistrate Judge found that "Movant fails to demonstrate prejudice from a possible spill-over effect based on her relationship to [Mr.] Mackey." ([294] at 13). The Magistrate reasoned that the district court instructed the jury—in a "sufficiently clear" manner"—to separately consider the evidence against each co-defendant, stating, "You must consider each crime and the evidence relating to it separately and you must consider the case of each defendant separately and individually." (Id.). The Magistrate Judge concluded that, "[o]n this record, the Court cannot find that Movant was subject to compelling prejudice such that no competent counsel would have failed to move for a severance." (Id. at 13-14). The Court finds no plain error in the Magistrate Judge's findings or conclusion regarding Movant's motion to sever argument.

C.      Certificate of Appealability

Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant."  A federal prisoner may not appeal the denial of his

§ 2255 motion "unless a circuit justice or a circuit or dist rict judge issues a

certificate of appealability under 28 U.S.C. 2253(c)."  Fed. R. App. P. 22(b)(1).

A certificate of appealability may issue "only if the applicant has made a

substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional

right "includes showing that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were adequate to deserve encouragement to proceed

further."  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citations and quotation

marks omitted); see also Jones v. United States, 224 F.3d 1251, 1254 (11th Cir.

2000) (applying Slack standard in a § 2255 case).  It is not reasonably debatable

that Movant's § 2255 Motion is required to be denied.  A certificate of

appealability is denied.

IV.    **CONCLUSION**
       For the foregoing reasons,

       **IT IS HEREBY ORDERED** that Magistrate Judge Janet F. King's Final

Report and Recommendation [294] is **ADOPTED**.

       **IT IS FURTHER ORDERED** that Movant's Objections [296] are

**OVERRULED**.

**IT IS FURTHER ORDERED** that Movant Inger L. Jensen's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 [276] is **DENIED** and this action is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED** this 12th day of June, 2018.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE